Our next case is case number 418-0770, and it is Nafziger v. Board of Education of Staunton Community Unit School District No. 6. For the appellant, we have Ms. Nicholas, and for the athlete, Mr. Berticchio. Is that how you pronounce that, sir? All right, thank you. You may proceed, Ms. Nicholas. I may please support Mr. Berticchio. We're here today on an appeal brought by the school district, Staunton Community Unit School District, related to the honorable dismissal pursuant to a reduction in force of Gail Nafziger. Ms. Nafziger was a tenured teacher in Staunton School District for a long period of time. She was evaluated in both the 2013-14 school term and the 2014-15 school term. In the spring of 2016, the school district implemented a reduction in force, what is effectively a layoff, under Section 2412 of the Illinois School Code. In doing so, the Staunton superintendent placed Ms. Nafziger in what is Group 2 of the sequence of honorable dismissal list. Staunton School Board then adopted a resolution honorably dismissing multiple teachers, including Ms. Nafziger, in March of 2016. Thereafter, Ms. Nafziger brought a declaratory judgment action against the school district or the school board based on the contention that she was misplaced on Group 2 of the sequence of honorable dismissal list instead of Group 3. This would have made a difference in what teacher was impacted by the reduction. Reductions in force impact decisions, but there obviously is going to be a person that's affected. In this case, had Ms. Nafziger been placed in Group 3, a different person would have been impacted by the reduction in force. After a trial on the matter, the trial court found that Ms. Nafziger was evaluated twice in the 2014-15 school term, both of which were proficient ratings, and therefore she was improperly placed in Group 2 and entered declaratory judgment in favor of the petitioner. Now that brings me to a question I want to ask you, Ms. Nicholas, because my understanding from your brief is that one of the positions you're taking is it doesn't matter even if she was evaluated twice because you can't use two evaluations from the same school year. Is that accurate? That is correct. When HERA and what we call Senate Bill 7, it monumentally changed the way reduction in force occurred in the state of Illinois. It used to be entirely seniority-based, and Section 2412 really only affected tenured teachers. When this statute was rewritten with Senate Bill 7, instead of being based entirely on seniority and only impacting tenured teachers, it changed to impact all teachers in the school district, and it was based on evaluation ratings. And then the legislature defined these different groupings which determined the order in which teachers were dismissed if there was a reduction. After the fact, as typically happens when you have a big change in the scheme of how something operates, these trailer bills came along. And one of those is the trailer bill that we've cited repeatedly in our briefs and also did so to the trial court, that in July of 2014, a trailer bill went into effect stating that only one evaluation rating can be used for purposes of determining the rating for placement on the sequence vulnerable dismissal list. One per school term. One per school term. So we're talking July 1 through June 30. Correct, and that's also defined in Article 24, and July 1 through June 30 also aligns with the fiscal year of the school districts. In this case, two documents were submitted from that school term, the 14-15 school term, and considered as evidence. One was from November of 2014, and the other from February of 2015, and both noted a proficient rating. However, there was also evidence put on by testimony of the principal, Brooke Weemers, and the superintendent, Dan Cox, that reflected that the February document was actually the summative evaluation rating. Besides totally reworking how the sequence vulnerable dismissal occurs and reduction in force, PARA, or the Performance Evaluation Reform Act, changed the way that evaluations occurred for teachers, and again, it was a significant change. We changed from three ratings to four ratings. Previously, it was excellent, satisfactory, and unsatisfactory. PARA changed it to include an additional rating of needs improvement, and changed satisfactory to proficient. PARA also eliminated the ability to get waivers from school districts to go to the legislature to ask for a different rating scale. This did clean up an issue across the state, but it also was a monumental change. From there, those ratings, when Senate Bill 7 came into effect, then had the impact on the sequence of vulnerable dismissal lists. It was a significant change to what teachers were accustomed to. That said, when the Trailer Act came into effect in July of 2014, it clarified that if a district was doing more than one evaluation, not observation, which is a different thing, an evaluation in a school term, only one counts for purposes of placement on the sequence of vulnerable dismissal for that school term. So you come to your ultimate evaluation through the use of observations. Yes, and those observations and evaluation ratings were defined both in Article 24A of the school code, as well as authority was given to the Illinois State Board of Education to issue rules, which they did subsequently adoption of PARA. In that, they defined what is required in an evaluation, and it varies for tenured and non-tenured teachers. Non-tenured teachers are required to be evaluated at least once a school year, and that evaluation must include three observations, at least two of which are formal. The regulations also define what constitutes a formal observation. It has to be at least 30 minutes, or an entire lesson, or an entire class period. And then there would also be an informal observation. The regulations further require that if an informal observation is to be used in the summative evaluation rating, documentation has to be provided in accordance with the statutory and regulatory scheme. If it is not to be used, then that requirement does not exist. There's nothing in either the rules or the statute that talks about that. So, in the 2014-15 school term, Principal Wiemers testified in the first document, the first evaluation rating from November, actually shows the two formal observations that occurred in November, and that's what she testified they were. She then testified that she did perform an informal observation and didn't modify the rating, so no documentation was required under the statute or the regulations, and the final evaluation rating of proficient was issued. Under Section 2412, and I will acknowledge that 2412B is exceptionally long. It used to be two paragraphs, now I think it counts out to about eight. But as they added the language and the Sequence Vulnerable Dismissal List was prepared, it showed that Ms. Nafziger, because of her Needs Improvement Summative Rating from the 2013-14 school term, and then the required observation evaluation the following year, the 2014-15 school term, she had a Needs Improvement and a Proficient Rating, using only one and using the one that was completed prior to the issuance of the Sequence Vulnerable Dismissal List. That one immediately before. Right. That list, pursuant to statute, has to be issued to the union at least 75 days prior to the end of the school term. Based on that, Ms. Nafziger was placed in Group 2. There are four groupings under the statute. Group 1 is first-year teachers who have not been evaluated, part-time teachers and teachers that were hired for a portion of the year to fill a leave of absence. That definition hasn't even been defined since Senate Bill 7 was initially enacted to include part-time teachers. Group 2 includes teachers who have either a Needs Improvement or Unsatisfactory Rating in their last two evaluation ratings. Group 3 includes teachers that have two Proficient Ratings or one if they've only been evaluated once. And then finally, Group 4 is teachers with their last two evaluation ratings are excellent or their last three are too excellent and proficient. The statute also provided that each district has to establish what is colloquially called the Joint RIP Committee. And they have to meet annually to discuss five topics that are assigned to them. The first is criteria for excluding from Group 2 and placing into Group 3 teachers whose last two performance evaluations include a Needs Improvement and either a Proficient or an Excellent. That is something that has to be evaluated annually by the committee. The stomp committee did meet. They did not modify any of the criteria related to placement from Group 2 into Group 3. The statute also provides that in the event they don't agree to changes, then it reverts back to the criteria set forth in 24B, the Group 1, Group 2, Group 3, Group 4 definitions. From there, the reduction in force is done in the following order according to the statute. Group 1 goes first, and that is at the discretion of the board. They don't have to follow any specific order. Group 2 is the order of average. So you're saying no specific order within Group 1? Within Group 1, correct. It's entirely at the discretion of the board. Within Group 2, it's the average evaluation ratings. And then the statute specifically defines values for each rating. So an Excellent is a 4, a Proficient is a 3, a Needs Improvement is a 2, an Unsatisfactory is a 1. In this case, it would have been a Needs Improvement and a Proficient added together, divided by 2 is 2.5. Teachers in Group 2 are then dismissed in order of lowest to highest of those average ratings. If the average ratings match, then it's in reverse seniority order. Ms. Nicholas? Yes? I'm sorry, I don't like to interrupt, but I want to make sure that I ask this question before you finish here. Understood. So if you could bookmark where you're at in your presentation. Sure. The trial court, the trial judge, did he issue his ruling orally or in writing? In writing. Okay. Was there a post-judgment or post-decision motion pursued? Or could there have been? Or is it a direct appeal after that decision? It's a direct appeal after the corrected order was entered. The first order entered didn't address FAC wages after declaratory judgment was entered. That had to be corrected after. After the fact, there was also an issue that the entire reduction was invalidated and there were two other teachers impacted that were not a part of this. So that was also corrected in the corrected order. My question relates to the basis for the judge's determination. He determined the two evaluations to be averaged were two that he considered to have been separate evaluations. Correct. That's contrary to your position here. But even if he was correct that those were separate evaluations per Section 2412B, only one evaluation per school year could be used in the determination of the averaging, correct? Correct. When it was apparent from the court's decision that the trial judge had used two from the same school term, was there an opportunity to present that to the judge in terms of Section 2412B's prohibition against doing exactly what he had done? In your estimation. We, throughout the course of the trial court proceedings, filed a motion for judgment on the fleeting citing that provision, a motion for summary judgment citing this provision, and argued it in our post-trial briefs.  After the fact, after the decision came down where it was apparent that the trial judge actually took two evaluations from the same school term, now you have that in his decision, did you attempt to identify for the trial judge what you considered to be his mistake? We did not, but we had also raised the identical issue multiple times through the proceedings. Backing up, with regard to Grouping 3, those teachers are honorably dismissed in reverse seniority order, and in Grouping 4, by reverse seniority order. In the event a district does a recall or brings teachers back, it's in the reverse order of how they were dismissed. There are still in existence provisions under Section 2411 that allow the non-reemployment of non-tenured teachers, so 2412 only affects teachers that were subject to a reduction in force and not your non-reemployed teachers under the other provision. Our argument in this case is both that the court misinterpreted the statute in finding that the two evaluations from the 2014-15 school term should have been used in determining placement on the Sequence Vulnerable Dismissal List, and also that the decision was in error and against the manifesto evidence. Standard of review with the statutory interpretation question is de novo. The standard to apply for review with an error in the decision is against the manifesto evidence, and we believe both of those apply here. Given the evidence that was submitted, that the evaluations from the 2014-15 school term complied with the regulatory and statutory provisions of the school code with regard to the number of observations and how they were conducted, the additional documentation that was submitted that Ms. Napsiger signed acknowledging the two ratings to be used were the needs improvement and proficient ratings, and the only changes that were made were to the licensure and certification on the documents. Because of all of these things, we believe the decision was against the manifesto weight of the evidence. A statute and its regulations have to be read as a whole. It can't be picking and choosing what works for the result that you want. And Article 24 and Article 24A are part of a much bigger statutory scheme, and the pieces all fit together. Here, where the addition was made to clarify that only one could be used per school term, that obviously then dovetails into the provisions above that in 2412B of what grouping a teacher should be placed in. There's nothing that indicates that if there are two, then only the second one from that year, and that is the only evaluation to be considered on placement. There is nothing that provides for that, and if you read the statute as a whole, it doesn't make sense. There's also no equitable version of how this should work. A district has to follow the law in how they implement their reductions in force. If they didn't, they'd be subject to different litigation for not following the law. There's no way to say, this teacher's been here for a long time, and we don't know that we want it to work this way. They have to follow the statutory scheme, and Staunton did. They did exactly what the statute and regulations provide for. They adopted the resolution honorably dismissing tenured teachers. Based on her evaluation ratings, Ms. Knapsiger was one of the teachers that was affected by being in Group 2. But there is nothing under that statutory scheme that provides legally for her being placed in Group 3. The RIC Joint Committee did not agree to modify the terms, so the district was bound by the terms of the statute. There's nothing in the collective bargaining agreement that allows for averaging ratings within a year, and even if it did, it would still be a proficient for the 14-15 school term. You'd still be dealing with the needs improvement from 13-14 and proficient from 14-15, which legitimately places Ms. Knapsiger in Group 2. Thank you very much. Thank you, Counsel. Mr. Peticchio? Please, the Court, Counsel. My name is Rick Peticchio, and I represent Neil Knapsiger. Your Honor, I'd rather you take my text. It leads to your question of averaging, the same question as Justice Harris. It's not what happened. My question wasn't of averaging. My question is the use of two evaluations from one school term. You didn't do that. You didn't do that. You followed the statute. Let's start out by saying that, and we'll go over the facts with you. The two issues, as we outlined to you, Your Honors, is that, based on the evidence, how many times was she evaluated in the school year 2014-15? We understand that in 2013-14, in February of 14, she received the needs improvement, and I'll get to that at a later time. But in 2014-15, how many times was she evaluated? The judge at findings in the record said she was evaluated twice. Now, school districts always said once, and we've said twice. Judge Deal and the trial court said twice, based on the evidence. So let's assume twice. How many can you use from 2014-15? That's the thing. The statute that we have strict compliance with, and attached to my brief, you guys are going to find these two reviews of the statute. And in one, I have the wording. The reason would be, why does the school district care if it's two times? She only gets to have one of them, and they're both proficient. So she's proficient, and average that with the one the year before, and she's a two. No. The statute says that you can only do it once. But if you look at the statute, it says that if she's evaluated twice, and we say she's evaluated twice, and so did Judge Deal, the trial court. Then the statute says only the rating from the last evaluation conducted prior to establishing the sequence of honorable dismissal lists in such school term. When did they establish the sequence of dismissal lists? Establish it for the year 2015-16, when she was at Ms. Sharpe's honorably in March of 2016. And then it says, so it shall be the one evaluation. So we're talking about the second evaluation in 2014-15, conducted in February-15, season four. That one evaluation shall be the one evaluation for rating from the school term used for the purpose of determining the sequence of dismissal. That's what the statute says. And what was the evaluation for that? What was the rating, I mean? Proficient. So that still leaves her with a needs improvement and a proficient. No. If you look at the statute, this is what Judge Deal determined. And Justice Harris is suggesting that there was an avenue. He didn't. He didn't say that these were the two and they were both proficient. He said, look at the statute. The statute says if there's more than one in a school year, more than one, the statute says the one evaluation, which is the last one, rating for the school term used for the purpose of determining the sequence of dismissal. Now, why would the legislature write it down? I don't know. That's what we're talking about, strict scrutiny of the statute to say you lost your appointment of 32 years. Here's what the school district says that says. They say it says, only the last evaluation deducted prior to establishing the sequence of honor of dismissal is, again, in such school term, there weren't any evaluations in 15-16, shall be the one evaluation rating from the school term used than in averaging with either the evaluation of the year before and or the year after being the two most recent evaluations. Now, that's one way of looking at it from the school district perspective, but that's not what the statute says. The statute says if she's evaluated twice, only the second is the one that is used. It doesn't say when you average it with the year before or average it with the year after. It says it is the one that is used in making the sequence of honorable dismissal listing. Read the statute. That's what it said, and that's what Judge Deal found. Judge Deal found that there were two evaluations, and under the statute, when they're given a set. They say there's only one. There's only one evaluation. That's what the statute says. But then it goes on to say, however, if there's more than one, only the last one. And then it says, is the evaluation for the purpose of determining the sequence of dismissal. That's what they should have done. That's what the statute says. Now, can they go back and get the statute amended and say, what we meant is that's the one that you average either with the year before or average with the year after to get an average, and then we will put you on a sequence of honorable dismissal based on that average. Well, I'm sure the legislature can do that, but that's not what they said. What they said was that evaluation, when there's two, is the one that is used to determine the sequence of honorable dismissal. Let me get to the importance of Judge Deal's, and I hope that I've responded to both of your questions. Judge Deal's determination of trial court that there were two. First, the petitioner, the ill-natured to testify, she was evaluated twice. Second, take Exhibit 3, take Exhibit 4. Those two farms, one farm, November 14th, February 15th, say in there, name the evaluator, date of evaluation, signature of evaluator. They said they were evaluated twice. Interesting enough, and not discussed at all by counsel, is that Exhibit 14, which is the professional developmental plan that once she had a needs improvement in 2013, 14, they had to do a professional developmental plan, and that plan says she will be evaluated during the next year more than a minimum time. It says it is anticipated that she will. Am I right? No, it says it is anticipated, definitively. But the school superintendent says, what's more than the minimum? Well, the minimum's one, what's more than the minimum? The answer is two. They were evaluated more than one time, and they did evaluate more than one time. Just look at the evidence, and remember, this is a fashion determination. Judge Deal, the trial court, deserves defense if this court has to comment on how many times she was evaluated, because that's a fact. Counsel said, we made a motion for judgmental acquittals, motion for summary judgment. Yeah, but each time, Judge Deal found there was a factual question, and that factual question was, how many times was she evaluated during the school term 2014-15? And the answer to that is two. Look at the evidence we cited in our brief to you. The issue then is, looking at that evidence, what else is there? Well, the professional developmental plan, even if it says anticipated, it gives guidance as to what they intend to do. They intend to do it more than the minimum. That means at least two. Now, interestingly, this is the first case of impression that we can tell you, as you've seen most of us did inside a lot of court before. One reason why, because this is the case of the first impression of a new law. Frankly, it will be the case of the last impression. It will be the only time this comes up. Because the old evaluation, the evaluation showed her needs improvement, had all the same categories. And she got the same rating, excellent, proficient, needs improvement, working, not satisfactory. If you took her 2013-14 evaluation form and applied the new standards, that point came into effect after she was evaluated, she would have had a proficient evaluation. The number system, the scale was set. Well, what's the importance of that? Well, the importance of that is this was at a time when she was evaluated, before the law was in effect. Now the law was in effect, it completely changed, I was just right, completely changed how you do honorable dismissal. When did PARA go into effect? Well, parts of it, and the part that is applicable here went into effect July 1, 2014. So it was after the needs improvement evaluation. Before then we went into professional development plan where she was evaluated more than a minute. And let me say it this way. I thought PARA was implemented by this school district in September of 2012. It was, except the amendment to 24-12 as to when the honorable dismissal goes into these groupings only became effective on July 1, 2014. Which gives you, that's why this is a case that first impression, it's also a case of last impression, there's no way, I suppose it would be one still being litigated up this far, but I doubt it. But this is a case of first impression as to, so she's evaluated under the old law, and under the old law if they used the scale she would have been proficient, but she needs improvement. Okay, we give you professional development plan, now the new law is in effect, and she's going to be evaluated more than a minimum of one, which in my mathematical ability is two. Anticipated. I correct myself, I think it was expected. But I have another question for you, counsel. I have another question for you, because I'm intrigued by your argument here that we're only looking at that one evaluation. So my question is, how do you reconcile that with section 24-12B that talks about within the grouping sequence for grouping two, the sequence of dismissal must be based upon average performance evaluation ratings with the teacher or teachers with the lowest average performance evaluation rating dismissed first. A teacher's average performance evaluation rating must be calculated using the average of the teacher's last two performance evaluation ratings, if two ratings are available. The recital you're talking about is the, if two ratings are available. You didn't have two available? No, not for the terminus sequence of all of the dismissal, because, again, I refer you to my brief, I refer you to the academy, I refer you to what the law says, and the law says if there, you know, it's a very exceptional circumstance, very difficult, that only if she had been evaluated twice does that last evaluation be the one evaluation that is used for the purpose of determining the sequence of dismissal. I thought your position was that she was evaluated twice. Okay. Let me make sure I get my, if I don't get my position right, I don't do my job. She was evaluated twice. Okay. In 2014-15. Once you reach that factual decision, then you say, well, what's the law say? Interesting enough, the law says that if there are two in one year, only the last one, which we did February 15th, made it proficient, shall be the one evaluation, it will be referenced on the court intercession in the same way that we met you, but the one evaluation to determine the sequence of honorable dismissal. Well, why is it that this woman, then, this one teacher, was evaluated twice in a year, and now we're only going to state the second one as the one that is determining the sequence of honorable dismissal? There were words that I didn't hear you say that in the statute, I see, that shall be the one evaluation rating from the school term. So isn't that telling us that if there are two evaluations in that school term, that just the last one from that school term is to be used? Why is that inconsistent with the appellant's argument? Because of the words before what you read, when it says, establish sequence of honorable dismissal in such school term shall be the one evaluation in such school term when determining the sequence of honorable dismissal in that term, in that term, she wasn't evaluated at all. That's what it says. You're looking, when you say that term, are you referring to 2015-16? Yes, ma'am, that was the term that they made the sequence of honorable dismissal list. So in that term, that's why, yes, you can probably determine, you can probably twist this statute around and say, oh, we think the school district should have won, but no, this is strict compliance, strict wording. It says, in such school term, when they made the honorable dismissal list, they didn't have any evaluations that year. They didn't. But then going on, so that was the wording that you're on, that I explained what you're asking me for, and that one tells you that one evaluation shall be for the purpose, shall be one evaluation for the purpose of determining the sequence of dismissal. Now, I have in my briefs, oh, I was actually looking at my long exhibits. I was looking at the one that they won. If you look at those and compare them, you'll see they're telling you, no, this one is, as you may be suggesting, as to when this evaluation occurs, you know, that this was the one, and then you average it with the other, just so the right would tell me, well, that's what they did. No, I'm not saying that. But that's not what it says. The statute says that if you have a year where there's two, only the second one is the year that you use for the purpose of determining the sequence of dismissal. That's the only one. And what Your Honor, Justice Harris tried to tell me, she said, well, that was for that school term. As a matter of fact, it was talking about the school term when they prepared the sequence of honor of dismissal. They prepared that that year, and she didn't have any evaluation. So where do you go with that? Well, I think the place that goes where Judge Dietl went in the trial court to say, well, and it says you take the last one, that's the one final dismissal. All she had was proficient. And remember that the parties stipulated to the court and counsel admitted in questioning that if she should have been in Group 3, then she would have been honorably dismissed. I mean, Group 3 still has a high effect of seniority. She worked there for 32 years and didn't have dismissal staff to give to her. But the answer is, if she's in Group 3, the parties stipulated, it was an incorrect honor of dismissal. Should she have been in Group 3, Your Honor, you can't be strict. Read out 24 to 12, and have the two there in your packet. Say, well, no, that's not going to be interpreted. Who says? Now, I realize the answer is you guys say it, but this is strict scrutiny for a 32-year teacher who lost her job. And counsel suggested, we didn't really want to, but we had to. Now, there was one other exhibit that counsel mentioned. It's Exhibit 5. When this law went into effect in the school year of 1450, they had this Exhibit 5 account where they were going to have information about all teachers given to them, and they would sign off saying, yes, correct, that's what it's about. She did sign Exhibit 5, and counsel made reference to that. But she testified, I had no idea what this was. I tried to meet with the superintendent. I didn't know what I was doing. I signed it and gave it back because I had to. She said, well, you signed it and you're stuck. Here's the interesting thing, and I cited it in my brief. Testimony by Exhibit 5 that was prepared by the superintendent says, for her last evaluation on Exhibit 5 that was February of 2015, that was the second one in that school year, the principal, who did the evaluation, so Principal Weavers said in question, well, no, that was wrong. The last evaluation was the November of 2014, so that form is wrong. Now, what's the big difference? The big difference is this. If they're trying to rely on Exhibit 5 that the teacher herself, the first time anyone ever saw this form, signed it, our excuse that she didn't know what she was doing, that'd be pretty good compared to the fact when you have the superintendent and you have the principal looking at the form and one saying, oh, no, that was right. It was Fred Williams, and no, no, no, no, it was a member. Doesn't really make a whole lot of difference because that's the form that the school district used and there was no, there was no citing of this court that that form was approved by the legislature and that's the form used. I don't think it makes any difference, but what does make a difference is don't use that as the basis to say Ms. Nassinger was not evaluated twice, which when we evaluated twice during the school term under the statute, only the last one was used for the purpose of determining the sequence of ongoing dismissal. So... And the school district didn't do that, and how? The school district didn't do that because only the last one in determining the sequence of ongoing dismissal was the one in February of 2015 where she said she's proficient and puts her to Room 3, State Relations and Disputes, Triad Departments, and she should not have been out of the dismissal. Now, if you have any further questions, I can go ahead and answer them. I won't see any at this time. Thank you. Thank you. Ms. Nicholas, I'm hopeful that you can start exactly where we left off in... I'm hoping. Okay. I have a couple of items... I mean, where he's left off is what I'm saying. Okay. First, I want to clarify. PARA went into effect in 2011-12. The trailer bill that added the language regarding multiple evaluations in a year, if that occurs, went into effect July 2014. It is very clear, just looking at the statutory language of 2412B, this Subsection B applies only to honorable dismissals and recalls in which the notice of dismissal is provided during the 2011-2012 school term. To say that all of these categories didn't go into effect until 2014 is absolutely incorrect. You said July 2014. Right. July 2014 was the trailer bill to try to correct the issue of there were multiple evaluations in a single year. But the sequence-vulnerable dismissal that divided teachers by category for purposes of determining order was 2011-2012. With regard to the lack of evaluation for the 2015-16 school term, Article 24A controls, as well as the collective bargaining agreement of the district, but tenured teachers should be evaluated at least every other school term. Further, if a teacher, tenured teacher, receives a needs improvement or unsatisfactory rating, they must be evaluated in the following school term. That was the reason that there was an evaluation both in 13-14 and 14-15 for a tenured teacher. There's been some talk about the Professional Development Plan. Excuse me, may I interrupt? Because I do want to... I still have questions in regards to what Mr. Dotticchio had been talking about in terms of 24-12B and the two evaluations and the language of the statute that he was citing too. Here, the honorable dismissal list was created for 2015-16, correct? Correct. Okay. The statute that he has quoted here in that ongoing office says only the rating from the last evaluation conducted prior to establishing the sequence of honorable dismissal list in such school term. Those are the words I want to emphasize here. In such school term. So, isn't that the school term 2015-16? Let me jump in because I think we have to finish that. In such school term shall be the one evaluation rating from that school term used for the purposes of determining the sequence of dismissal. Does that make a difference? I think it does. Because you have to read the entire phrase together. Well, excuse me. I haven't asked my question yet. Oh, I'm sorry. So, no, that's okay. I want you to interpret that when it says in such school term and then immediately after says from the school term used for purpose of determining the sequence of dismissal, they're talking about the same school term where the term is used twice in that section. I don't think they necessarily are. Because one thing to keep in mind I'm sorry, I'll wait. Is that 2412B requires the preparation of sequence of honorable dismissal list annually to be submitted to the union every year at least 75 days prior to the end of the school term. So, when you read it, you're looking at two different things. One, that I call the SOD list, the sequence of honorable dismissal list, is distributed annually to the union or the representative of the collective bargaining group. So, when we're talking about that first phrase, only the rating from the last evaluation conducted prior to establishing the sequence of honorable dismissal list in such school term, that for the year that it's created. In this case, I would say that's really not even applicable because she wasn't evaluated in 1516 because she didn't have to be under section 24A and arguably couldn't be because she was back on the regular evaluation schedule of every other year after receiving the proficient rating. But does it take us, but it says the rating from the last evaluation conducted prior to establishing the sequence of honorable dismissal list in that school term. So, we're looking at 1516 and then we have to go back to what was the last evaluation conducted prior to the establishment of that list, whatever it was, whatever school term it was. Right. So, then if you read on, then it's the one evaluation rating from that school term used for purpose of determining the sequence of honorable dismissal. So, you're analyzing the two evaluations in the school term to determine which one is used to pull it back up to the provisions of does the teacher fall into group 1, 2, 3, or 4. To read it otherwise completely eliminates the purpose of the groupings. I will acknowledge, it changed the scheme of reductions significantly. It was huge. It changed, it was factored in and out. But the discounts have... I'm sorry, you're out of time. Thank you very much to both of you and we'll take this matter under advisement and be in recess until the next case.